IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAURIE M. STANTON, : | |
|     Plaintiff, : | |
| : | CIVIL ACTION NO. |
| v. : | |
| : | |
| LANCASTER GENERAL : | JURY TRIAL DEMANDED |
| HOSPITAL, PULMONARY : | |
| ASSOCIATES OF : | |
| LANCASTER, LTD, : | |
|     Defendants. : | |

## COMPLAINT

AND NOW comes the Plaintiff, Laurie M. Stanton, by and through her undersigned counsel, and hereby files this Complaint and states as follows:

## INTRODUCTION

1. Plaintiff initiates the instant action to redress violations by Defendants of the Americans with Disabilities Act, as Amended ("ADA"), 42 U.S.C. § 12101 et. seq. and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§951-963.

## PARTIES

2. Plaintiff, Laurie M. Stanton, is an adult individual and resides in the Commonwealth of Pennsylvania in Lancaster County, Pennsylvania, 17603.

3. Defendant, Lancaster General Hospital (also "LGH") is a Pennsylvania non-profit corporation which provides a wide variety of health care

services to the public and has a business address of 555 North Duke Street, Lancaster, Pennsylvania 17604.

4. Defendant, Pulmonary Associates of Lancaster, LTD (also "PAL"), is a Pennsylvania corporation which provides certain health care services to the public and has a business address of 540 North Duke Street, Lancaster, Pennsylvania  17602.

## JURISDICTION AND VENUE

5. This Court, in accordance with 28 U.S.C. §1331, has jurisdiction over Plaintiff's claims because this civil action arises under a law of the United States.

6. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth in the United States Supreme Court in International Shoe v. Washington, 326 U.S. 310 (1945) and its progeny.

7. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## **FACTUAL ALLEGATIONS**

8. The foregoing paragraphs are incorporated herein by reference as if fully set forth hereinafter at length.

9. The Defendant, LGH, hired Plaintiff on or about August 2007 as a secretary.

10. After hire, Plaintiff began working at PAL.

11. Upon information and belief, LGH supplies workers to PAL.

12. LGH and PAL directed Plaintiff's employment activities to one degree or another.

13. LGH paid wages to Plaintiff.

14. Plaintiff performed her job in a satisfactory manner at all relevant times.

15. Plaintiff was qualified to perform the essential functions of her job at all relevant times.

16. Plaintiff's last job title was as a full-time Customer Service Specialist.

17. When Plaintiff was hired by Defendants and began working for Defendants, she informed the Practice Manager of PAL, Edna Hackman, that she had asthma.

18. When hired, Plaintiff also informed the Practice Manager, Edna Hackman, that fragrances/scents from perfumes, lotions, colognes, and other such products trigger her asthma and cause her to have asthma attacks.

19. At or near the time of hire, Plaintiff informed the Practice Manager, Edna Hackman, that the main reason she applied to work in the pulmonary practice was because that would be a safe environment for her.

20. The Practice Manager, Edna Hackman, at or near the time of hire, told Plaintiff that no perfumes, colognes, lotions or other such products and smells were allowed to be worn by staff in the office because of the health issues of its pulmonary patients.

21. Within days of beginning work, Plaintiff had an asthma attack because of fragrances/scents present on another co-worker.

22. Sue Ammerman was present the day Plaintiff had this first asthma attack. Ms. Ammerman was in charge because Edna Hackman was out of the office that day.

23. When Plaintiff had her first asthma attack, she asked for help and Sue Ammerman allowed Plaintiff to move to another location to work until the matter was addressed with the co-worker.

24. Defendants addressed Plaintiff's first asthma attack by telling/reminding the co-worker that she could not wear perfumes/lotions or any scented products at the office.

25. Plaintiff had an asthma flare-up at work in approximately 2011. At that time, Sue Ammerman was the Practice Manager (also "Practice Manager" hereafter).

26. Plaintiff went to meet with the Practice Manager, and also with Nicki Barnes of Human Resources (HR) in 2011 as a result of her asthma flare-up.

27. As a result of Plaintiff's meetings in 2011, the Practice Manager made an announcement, as had been done at many staff meetings before, reminding workers that they were not permitted to wear perfumes, colognes, lotions or any scented items to work because of Defendants' pulmonary patients as well as because of employees who had medical conditions affecting their breathing.

28. Plaintiff had no constant/chronic problems of note with her asthma until 2015.

29. In December 2015, a co-worker, with whom Plaintiff had worked for about 6 years, began wearing a fragrance/scent to work that she had not worn before.

30. Because Plaintiff sat side-by-side with this co-worker, in an enclosed area, Plaintiff had extreme difficulty breathing most days due to the fragrance/scent triggering asthma attacks.

31. Plaintiff reminded the co-worker that, in addition to her asthma flare-ups and difficulty breathing, many of the letters, brochures, etc. that Defendants send out to patients also stated that Defendants have restrictions/limitations on smells in the office due to patients' health issues.

32. Symptoms of Plaintiff's asthma flare-ups/attacks during this time period included, but are not necessarily limited to: wheezing, coughing, difficulty breathing, mucous drainage, sore throat, headache, dizzy, lightheaded, decrease in concentration and focus, and general inability to effectively perform activity, including work activity.

33. Soon thereafter, also at or near December 2015, another co-worker also appeared at work smelling of fragrances/scents that they had not worn before. These scents also caused Plaintiff's asthma to worsen.

34. When Plaintiff asked the Practice Manager for help, she said "Remember, I didn't hire you, Edna did" or words to that effect.

35. The Practice Manager essentially conveyed that she was not bound by anything Edna Hackman or anyone else told Plaintiff at or near the time of her hire.

36. Plaintiff asked for an accommodation by asking the Practice Manager if she could be moved to an empty desk in a low traffic area of the office, where it was far less likely that her asthma would be affected. This desk was empty during the day shift, which is when Plaintiff worked.

37. Plaintiff was moved from her current work area in the scheduling area "out front," to "Anita's desk," in the billing area, but not to the empty desk Plaintiff requested.

38. Anita's desk, in the billing area, was in a high traffic area where more people worked and, thus, was more prone to fragrances/scents, which is why Plaintiff asked to be moved to the empty desk in the back of the billing office area, where there was far less foot traffic.

39. At Anita's desk, Plaintiff continued to have asthma attacks.

40. Plaintiff continued to bring these issues to the attention of the Practice Manager and also to both the HR and Employee Health departments.

41. Plaintiff asked to be moved to the empty desk at least 3 times.

42. Defendants did not move Plaintiff to the empty desk.

43. Defendants did not, as they had done for years prior to this, require staff to refrain from wearing and appearing at work with fragrances/scents.

44. Plaintiff was now using her rescue inhaler almost daily, and sometimes several times a day. Plaintiff had not used her rescue inhaler on a regular basis from the time of hire in 2007 until this time in 2015.

45. When Plaintiff spoke to HR, and discussed her strained relationship with the Practice Manager, she was told "I will pretend I didn't hear that."

46. On or about March 7, 2016, Plaintiff's doctor sent paperwork to Defendants that informed Defendants, inter alia, that: A) Plaintiff has asthma that flares up significantly and limits her breathing, and that B) a reasonable accommodation would be to allow Plaintiff to work in a scent-free environment.

47. Finally, on or about March 29, 2016, at a meeting with the Practice Manager, with Cheri McCormick of HR, and Bobbi Jo Hurst of Employee Health, Plaintiff was told that she would be moved to the empty desk in the back of the billing office area as she had requested.

48. At the March 29, 2016 meeting Plaintiff also informed the Practice Manager, HR and Employee Health, that she was still having frequent asthma attacks that required use of her rescue inhaler almost daily. Plaintiff had concerns regarding using her inhaler so often. It was affecting her heart rate and heart rhythm because of her two open heart surgeries.

49. At the meeting of March 29, 2016 it was agreed that signs would be posted on 4 doors in the billing office area stating that this was a fragrance free

area.  Plaintiff was instructed to notify the Practice Manager, by email, of each and every time she encountered someone wearing a fragrance/scent.

50. Plaintiff emailed the Practice Manager of co-workers and employees when she encountered someone wearing a fragrance/scent.

51. On or about March 30, 2016, Plaintiff had at least 3 asthma attacks. She notified the Practice Manager each time by email.

52. Later on March 30, 2016, the Practice Manager told Plaintiff that she was now **not** going to be moved to the empty desk as agreed at the previous days' meeting.

53. When Plaintiff asked why she was not being moved back to the empty desk as planned and agreed, the Practice Manager told Plaintiff that she embarrassed the Practice Manager at the meeting of March 29, 2016.

54. The Practice Manager also said she did not have time to read Plaintiff's emails about her condition, even though Plaintiff was instructed to keep Practice Manager informed of such.

55. At Plaintiff's meeting of March 30, 2016 with the Practice Manager, the Practice Manager noticed that Plaintiff was out of breath, at which time Plaintiff again explained that she was exposed to several co-workers that morning who had smells present on them.

56. At the March 30, 2016 meeting, the Practice Manager asked Plaintiff if she had ever thought about filing for disability.

57. Plaintiff continued work at Anita's desk, during which time she continued to have asthma attacks.

58. Plaintiff went home on at least one occasion due to her asthma attacks.

59. On or about April 7, 2016 Plaintiff returned to HR and met with Cheri McCormick about her asthma issues and about her supervisor, the Practice Manager. Plaintiff informed Ms. McCormick that she was being bullied.

60. Ms. McCormick told Plaintiff that showing up at the meeting without Plaintiff's supervisor "sent up red flags with her."

61. Ms. McCormick also asked Plaintiff if she thought about applying for disability.

62. Ms. McCormick asked Plaintiff to get ADA papers filled out and returned to her. Plaintiff told her she had already done so and submitted them about a month prior, in early March 2016.

63. Plaintiff broke down in tears in Ms. McCormick's office at which time Ms. McCormick said, "you sure do get teary eyed about this issue."

64. Ms. McCormick asked what Plaintiff wanted from the meeting and Plaintiff said she just wanted to work in an area where she could breathe properly as she had done for many years there.

65. Plaintiff continued to have asthma attacks.

66. On April 19, 2016, Plaintiff gave her resignation by letter with an effective date of May 13, 2016.

67. The reason Plaintiff resigned was her inability to continue to work in the fragrance/scent-filled environment due to her long-standing asthma conditions. Leading up to her resignation, Plaintiff was having serious breathing issues daily.

68. Plaintiff met with her primary care physician and also with her asthma specialist and doctor before she resigned.

69. Before she resigned her position, Plaintiff sought a transfer to another job within the Defendant LGH's system which did not have problematic environmental issues. Defendants did not hire or transfer Plaintiff into another positon.

70. On or about April 25, 2016, a week **after** Plaintiff handed in her resignation letter, the Practice Manager told Plaintiff that she would be moved to the empty desk in the billing area. Plaintiff had never been moved to that desk before.

71. When Plaintiff was moved to the empty desk, she was also told that the move was temporary because she was going to be moved back up to "the front" scheduling area where the asthma problems first began.

72. Plaintiff was told that she needed to be able to go back up front and work because she was interrupting the flow of the office.

73. When Plaintiff mentioned her asthma to her superiors and/or sought accommodations, during the relevant time, she was told, among other things:

1. Remember, I didn't hire you, Edna Hackman did (when Plaintiff asked about an accommodation).
2. You need to stop blowing your mouth off in this office about your asthma.
3. Have you ever thought about applying for disability?
4. You are a liability to this office (referring to Plaintiff's asthma).
5. You interrupt the workflow of the office by needing to be at a different desk.
6. People are getting upset about me coming to them and asking if they have perfume on.
7. I don't have time to read your emails (about her asthma flare-ups, as she was instructed to do) all day long.
8. Your time off request notes have been disrespectful to me ever since you started with this "asthma thing."
9. You look terrible right now – you're having breathing problems right now, aren't you?
10. So what do you do when you go to church and someone with perfume sits next to you? What about a restaurant?
11. You embarrassed me at the meeting yesterday (this was said when Plaintiff asked to move to the empty desk).
12. People are complaining to me about you being obnoxious about your asthma.
13. If I catch you arguing with anyone in this office about your asthma – I will write you both up.
14. If you have an asthma attack here, I don't want you going to Worknet for that.

15. If you have a bad asthma attack and I'm not here, you need to go down to Employee Health before going home.
16. You were rude yesterday when you said someone in the office had a strong perfume odor – I don't want you to say anything about this again.
17. When Ms. Stanton applied for a lateral move within LGH and told the Practice Manager that she had done so, Plaintiff was told, "Well, I'm trying to get you out of here as soon as I can too."
18. Don't think this is permanent (referring to finally being placed at the empty desk) – you will be moved back up front soon.  I need you up front.  This interrupts the work flow of the office.

74. Defendants had rules and/or policies in place that prohibited scents and fragrances in the work place, however, Defendants did not enforce and/or discontinued the enforcement of these rules and/or policies even after Plaintiff complained and requested an accommodation.

75. Any reasonable person would have resigned based on the above-stated facts and circumstances.

### Count I
### Discrimination – Disability/Retaliation –
### Americans with Disabilities Act, as Amended

76. All paragraphs of this document are incorporated herein by reference as if set forth more fully hereinafter at length.

77. Plaintiff suffered from medical conditions which substantially limit major life activities.

78. Plaintiff has a record of her disabling conditions/impairments, which record was known to Defendants.

79. Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodations.

80. Plaintiff requested accommodations of Defendants for her medical conditions and complained about discriminatory treatment.

81. Defendants failed to make any meaningful and reasonable accommodations for her condition.

82. Plaintiff was discriminated against and constructively discharged because of her actual and/or perceived disabilities, because of her record of impairment, and in retaliation for requesting an accommodation and for opposing disability discrimination.

83. The aforesaid actions violate the Americans with Disabilities Act, as Amended.

### Count II
### Discrimination – Disability/Retaliation –
### Pennsylvania Human Relations Act

84. All paragraphs of this document are incorporated herein by reference as if set forth more fully hereinafter at length.

85. Plaintiff suffered from medical conditions which substantially limit major life activities.

86. Plaintiff has a record of her disabling conditions/impairments, which record was known to Defendants.

87. Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodations.

88. Plaintiff requested accommodations of Defendants for her medical conditions and complained about discriminatory treatment.

89. Defendants failed to make any meaningful and reasonable accommodations for her condition.

90. Plaintiff was discriminated against and constructively discharged because of her actual and/or perceived disabilities, because of her record of impairment, and in retaliation for requesting an accommodation and opposing disability discrimination.

91. The aforesaid actions violate the Pennsylvania Human Relations Act.

### Count III
### Discrimination – Hostile Work Environment

92. All paragraphs of this document are incorporated herein by reference as if set forth more fully hereinafter at length.

93. Defendants intentionally discriminated against Plaintiff because of her disability and/or perceived disability, and/or because she asked for an accommodation.

94. Plaintiff was subjected to a hostile work environment through Defendants words and actions toward her.

95. The harassment was severe and pervasive.

96. Plaintiff did not welcome Defendants' actions.

97. The harassment detrimentally affected Plaintiff.

98. The harassment to which Defendants subjected Plaintiff would have detrimentally affected a reasonable person who was similarly situated to her.

99. Defendants knew or should have known of the harassment, but failed to take prompt, effective and remedial action.

100. The Defendants' failure to reasonably accommodate her and their harassment resulted in Plaintiff having to tender her resignation.

101. Based on the foregoing, Plaintiff alleges that the Defendants violated the ADA, as Amended, and the PHRA.

WHEREFORE, Plaintiff prays this Honorable Court to enter an Order providing that:

1. Defendants are prohibited from continuing its/their illegal policy, practice or custom of discriminating against employees and are to be

ordered to promulgate an effective policy against such discrimination and to adhere thereto;

2. Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits, together with any increases and contributions thereto, including but not limited to, past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits as permitted by law.  Plaintiff should be awarded such pay and benefits from the date of her resignation forward as allowed by law.

3. Plaintiff is awarded interest as allowed by law.

4. Plaintiff is awarded punitive damages and/or liquidated damages as allowed by law.

5. Plaintiff is awarded costs of suit and expenses of this action and reasonable legal fees as allowed by law.

6. Plaintiff is awarded any and all other legal and equitable relief allowed by law.

7. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law.

8. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

        Respectfully submitted,

        **Trinity Law**

        Shawn P. McLaughlin, Esquire
        145 East Market Street
        York, PA 17401
        Telephone No. (717) 843-8046
        Facsimile No. (717) 854-4362
        smclaughlin@TrinityLaw.com

DATED: 11/17/2017